FULTZ MADDOX DICKENS, PLC
ADRIANNE J. SIMON (Cal. Bar No. 150227)
asimon@fmdlegal.com
101 South Fifth Street, 27th Floor
Louisville, KY 40202-3116
Tel: 502-992-5047
Fax: 502-588-2020

Attorneys for Plaintiff THC –
ORANGE COUNTY, LLC
d/b/a KINDRED HOSPITAL
SAN FRANCISCO BAY AREA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| THC – ORANGE COUNTY, LLC d/b/a KINDRED HOSPITAL SAN FRANCISCO BAY AREA, a California limited liability company<br><br>Plaintiff,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIELD OF ILLINOIS, an Illinois mutual legal reserve company,<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR BENEFITS UNDER ERISA (29 U.S.C. § 1132)** |

Plaintiff THC – Orange County, LLC d/b/a Kindred Hospital San Francisco Bay Area ("Kindred Hospital"), for its complaint, complains and alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under the laws of the United States, 29 U.S.C. § 1331 (federal question), as a civil action encompassing violations of the

Employees Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2), in that a substantial portion of the events or omissions giving rise to Kindred Hospital's claims occurred in this district.

## THE PARTIES

3. Kindred Hospital is a limited liability company organized and existing under the laws of the State of California with its principal place of business in Louisville, Kentucky. Kindred Hospital operates a long term acute care hospital in San Francisco, California, which provides care and treatment to the sickest of the sick – patients who require intensive treatment for an extended period of time that a short term acute care hospital is not equipped to provide.

4. Upon information and belief, defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois ("BCBS") was the claims administrator and agent for the employee benefit plan organized and existing under the provisions of the Employees Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq* (the "Plan") during the events at issue. Upon information and belief, BCBS was at all times a fiduciary of the Plan within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21).

5. The Plan, Plan Sponsor, and Plan Administrator (referred to collectively as the "Plan Defendants") are as yet unknown to Kindred Hospital. Upon information and belief, the unidentified Plan Defendants are also fiduciaries of the Plan within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). Upon identification of the Plan Defendants, Kindred Hospital will promptly amend this action to name the Plan Defendants as additional defendants.

///

///

## FACTUAL BACKGROUND

6. Between July 15, 2017, and December 11, 2017, the patient at issue in this action (whose name will not be used to protect the patient's privacy and who will hereinafter be referred to as the "Patient"), was a patient at Kindred Hospital. On information and belief, for the entirety of that time, the Patient had medical coverage through and was thus a beneficiary of the Plan.

7. Prior to admitting the Patient, Kindred Hospital contacted BCBS to verify the Patient's coverage under the Plan and obtain authorization for the admission. Upon information and belief, BCBS, at times acting through Anthem Blue Cross of California as the local plan, was the Plan Defendants' claims administrator, agent, and fiduciary at the time of the events at issue.

8. A BCBS representative advised Kindred Hospital that the Patient was eligible for coverage under the Plan and that Kindred Hospital would receive payment at the rate set forth in its contract with Anthem Blue Cross of California. The Plan Defendants, through BCBS, also authorized the Patient's admission to Kindred Hospital as medically necessary.

9. In reasonable reliance on the Plan Defendants' representations, through their agent BCBS, Kindred Hospital admitted the Patient into its facility and provided her with care and treatment.

10. In connection with her admission to Kindred Hospital, the Patient executed an assignment to Kindred Hospital of all of her "rights, title, and interest (including all possible causes of action against any insurer or health plan, including without limitation, the right to sue to enforce payment and/or the right to sue for denial of coverage) in and to any and all health or medical benefits or payments due" to the Patient under her ERISA plan.

11. Kindred Hospital submitted its claims for the Patient's care and treatment to the Plan Defendants, through BCBS and Anthem Blue Cross of

PRINTED ON RECYCLED PAPER

California, in the regular course of business. In doing so, Kindred Hospital expressly indicated on its claim forms that it sought to recover benefits via the Patient's assignment of benefits.

12. The Plan Defendants paid Kindred's claims for certain dates of the Patient's admission. The Plan Defendants refused, however, to pay Kindred Hospital's claims for care and treatment provided to the Patient from October 13, 2017, through December 11, 2017, on the alleged ground that the care and treatment the Patient received during these dates was not medically necessary.

13. Contrary to the position of the Plan Defendants, the care and treatment the Patient received at Kindred Hospital during the denied dates was medically necessary. The Patient was a medically complex 62-year-old woman who was transferred to Kindred Hospital from a hospital in Florida, where she had been hospitalized after being found non-responsive while traveling. At that hospital, it was determined that the Patient had suffered a stroke, basilar artery thrombolysis requiring thrombectomy, and a heart attack. She also developed Klebsiella and C. difficile colitis infections requiring IV antibiotics.

14. After she was sufficiently stablized, the Patient was transferred to Kindred Hospital on ventilator support for continued medical management of her medically complex conditions, which were further complicated by her comorbid conditions of diabetes, anemia, hypertension, congestive heart failure, and hyperlipidemia.

15. While at Kindred Hospital, the Patient required daily physician visits from doctors of varying specialties, as well as more than 6.5 hours per day of skilled nursing services and frequent lab work and diagnostic procedures that could not have been provided at a lower-level facility.

16. Throughout the denied dates of service, the Patient experienced multiple multidrug-resistant infections, including Klebsiella, that required ongoing monitoring

PRINTED ON RECYCLED PAPER

and management and prevented her discharge to a lower level of care. She also remained on a ventilator and required respiratory management and trach care throughout the denied dates. She continued to require feedings via PEG tube and regular blood-glucose monitoring with sliding scale insulin per results. The Patient also required complex wound care due to a severe sacral ulcer that had required flap surgery and removal of bone.

17.     The Patient remained non-responsive to stimuli throughout her admission at Kindred Hospital, and her prognosis for recovery was poor. But despite this poor prognosis, the Patient's spouse remained hopeful that she might recover and she remained on full-code status. Kindred Hospital was obligated to comply with the instructions of her spouse and next-of-kin.

18.     Thus, Kindred Hospital continued with the treatments necessary to sustain the Patient's life and prevent further deterioration of her condition. This could not have been done at a lower level of care, as management of the Patient's acute and chronic conditions required daily physician oversight, 24/7 nursing care, and other skilled care that would not have been available at a lower level.

19.     The Patient's spouse ultimately made the decision to withdraw life support on December 8, 2017, and the Patient passed away at Kindred Hospital on December 11, 2017. Until that date, Kindred Hospital continued to provide the Patient with the medically necessary care and treatment she required.

20.     Furthermore, Kindred Hospital could not have discharged the Patient during the denied dates even if she had been sufficiently stable to do so, as no safe discharge option was available. Kindred Hospital in fact submitted referrals to multiple lower level of care facilities, but the Patient was clinically denied at each of these facilities due to her intensive medical needs, including her Klebsiella infection, which required contact isolation, and her need for a ventilator and tube feedings.

COMPLAINT FOR BENEFITS UNDER ERISA

PRINTED ON RECYCLED PAPER

21. In light of the Patient's complex care needs and lack of a safe discharge option, the care and treatment she received at Kindred Hospital during the denied dates was medically necessary and should have been authorized by BCBS and paid for by the Plan Defendants under the terms of the Plan.

22. Upon information and belief, BCBS and the Plan Defendants denied coverage and payment for the Patient's care and treatment at Kindred Hospital because the Patient's prognosis for recovery was poor. However, the Patient Protection and Affordable Care Act ("PPACA") includes hospitalization as an "essential health benefit" and prohibits coverage denials against the wishes of the patients (or persons acting on their behalf) made on the basis of the "expected length of life or of the individuals' present or predicted disability, degree of medical dependency, or quality of life." Similarly, PPACA prohibits coverage decisions that discriminate based on these same factors. See 42 U.S.C. § 18022(1)(C), 4(B) and 4(D). As such, BCBS and the Plan Defendants' refusal to authorize and pay for the medically necessary care and treatment the Patient required also violates PPACA.

23. Kindred Hospital submitted a detailed clinical appeal of BCBS's determination that the Patient's care was not medically necessary during the denied dates of service. BCBS, however, acting on behalf of the Plan Defendants, denied this appeal without substantive review. Had BCBS substantively reviewed Kindred's clinical appeal and the accompanying medical records, it surely would have determined that the care and treatment the Member received during the denied dates was medically necessary, that retroactive authorization was warranted, and that Kindred should be paid in full.

24. Kindred Hospital has exhausted, or is deemed to have exhausted by virtue of Plan Defendants' failure to comply with ERISA regulations, all administrative remedies under the Plan, or is excused from doing so on the basis of futility.

PRINTED ON RECYCLED PAPER

25. As of the filing of this litigation, BCBS and Plan Defendants have never asserted any "anti-assignment" clause in Plan documents in connection with Kindred Hospital's claims for care and treatment of the Patient. BCBS and the Plan Defendants have therefore waived the enforcement of, or are equitably estopped from asserting, any anti-assignment clause in Plan documents.

26. Based on the contract rate between Kindred Hospital and the BCBS local plan, Anthem Blue Cross of California, $191,192.00 remains due and owing to Kindred Hospital in connection with this uncompensated care and treatment.

## CLAIM FOR BENEFITS UNDER ERISA, 29 U.S.C. § 1132

27. Kindred Hospital repeats and realleges the allegations contained in paragraphs 1 through 26, inclusive, and incorporates the same as though set forth in full.

28. Pursuant to the assignment of benefits executed by the Patient, a beneficiary under the Plan pursuant to 29 U.S.C. § 1132(a)(1), Kindred Hospital may also be considered a beneficiary under the Plan for purposes of this claim for ERISA benefits against the Plan Defendants.

29. Accordingly, Kindred Hospital is empowered to bring a civil action against the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B), to recover benefits due to it under the terms of the Plan and to otherwise enforce its rights under the Plan.

30. Upon information and belief, under the terms of the Plan, benefits are paid for medically necessary care and treatment, which is typically defined as health care services provided for the purpose of evaluating, diagnosing or treating an illness, injury, disease or its symptoms and that are in accordance with generally accepted standards of medical practice, clinically appropriate, effective, not primarily for the patient's or provider's convenience, and not more costly than an equivalent alternative.

PRINTED ON RECYCLED PAPER

31. The care provided to the Patient by Kindred Hospital clearly met this definition. The Patient was unstable and had medically complex conditions that required treatment that would not and could not have been provided at a lower level of care. Instead, the Patient required frequent and multi-faceted services and treatments that could only be provided in an acute care facility like Kindred Hospital.

32. Moreover, Kindred Hospital cannot discharge a patient without a physician discharge order and a safe discharge option. Until then, discharge screens are not met under any criteria used to evaluate medical necessary and continuing stay criteria are met for that reason alone. Kindred Hospital had neither a physician discharge order nor a safe discharge option before the Patient passed away.

33. In addition to refusing to pay for medically necessary care in contravention of the terms of the Plan, the Plan Defendants failed to discharge other duties under ERISA. Among other things, on information and belief, they failed to have a reasoned basis for their decision to deny coverage, unreasonably construed the plain language of the Plan, failed to provide a full and fair review, and otherwise failed to fairly adjudicate benefits in violation of the terms of the Plan and requirements under ERISA and PPACA.

34. In short, the Plan Defendants wrongly denied benefits under the Plan and committed numerous other procedural violations. As such, Kindred Hospital is entitled to the $191,192.00 that remains due and owing for the Patient's care, along with interest on the unpaid benefits and reasonable attorneys' fees and costs for the amounts it has been forced to expend to address the Plan Defendants' wrongful denial of benefits and other wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Kindred Hospital prays for judgment against the Plan Defendants, jointly and severally, as follows:

1. For benefits under the Plan in an amount exceeding $191,000;

PRINTED ON
RECYCLED PAPER

2. For pre-judgment and post-judgment interest on the above amounts at the maximum legal rate;

3. For costs of suit and reasonable attorneys' fees pursuant to ERISA and otherwise to the extent permitted by law;

4. For such other and further relief as the Court may deem just and proper.

DATED: December 4, 2023

Respectfully submitted,

FULTZ MADDOX DICKENS PLC

By: _____
ADRIANNE J. SIMON
Attorney for Plaintiff THC –
ORANGE COUNTY, LLC
d/b/a KINDRED HOSPITAL
WESTMINSTER